UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ritchie Capital Management, L.L.C.;       )
Ritchie Special Credit Investments,       )
Ltd.; Rhone Holdings II, Ltd.;            )
Yorkville Investments, I, LLC; and        )
Ritchie Capital Structure Arbitrage       )
Trading, Ltd.,                            )
                                          )
                    Plaintiffs,           )
                                          )        **MEMORANDUM OPINION**
                                          )        **AND ORDER**
          v.                              )        Civil No. 10-668 ADM/JJG
                                          )
                                          )
Mary Jeffries and Camille Chee-Awai,      )
                                          )
                    Defendants.           )

_____

Thomas C. Cronin, Esq., Cronin & Co., Ltd., Chicago, IL, and Steven S. Shonder, Esq., Law Offices of Steven S. Shonder, Chicago, IL, on behalf of Plaintiffs Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investments, I, LLC; and Ritchie Capital Structure Arbitrage Trading, Ltd.

Andrew S. Birrell, Esq. and Jeffrey S. Storms, Esq., Gaskins Bennett Birrell Schupp LLP, Minneapolis, MN, on behalf of Defendant Mary Jeffries.

Gregory Simpson, Esq., Meagher & Geer, PLLP, Minneapolis, MN, on behalf of Defendant Camille Chee-Awai.

_____

## I. INTRODUCTION

On November 21, 2011, the undersigned United States District Judge heard oral

argument on defendants Mary Jeffries ("Jeffries") and Camille Chee-Awai's ("Chee-Awai")

(collectively, "Defendants") Motions to Dismiss [Docket Nos. 92, 97]. Plaintiffs Ritchie Capital

Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.;

Yorkville Investments, I, LLC; and Ritchie Capital Structure Arbitrage Trading, Ltd.

(collectively, "Ritchie") oppose the Motions.  Following the hearing, at the Court's request the parties provided supplemental briefing [Docket Nos. 111, 112].  For the reasons set forth below, the Motions to Dismiss are granted.

## II.  BACKGROUND[1]

The Ritchie entities are investment funds who loaned money to companies owned by Minnesota businessman Thomas J. Petters ("Petters").  Compl. [Docket No. 1] ("RICO Compl.") ¶¶ 1, 16.  Like many Petters investors and creditors, Ritchie suffered severe losses when it was discovered that Petters was operating a $3.65 million Ponzi scheme.[2]  Ritchie Capital Mgmt., L.L.C. v. Jeffries, 653 F.3d 755, 757 (8th Cir. 2011).

Defendants are officers within corporations wholly owned by Petters.  Id. at 758.  Jeffries is the President and Chief Operating Officer of Petters Group Worldwide ("PGW"), Chief Operating Officer of Petters Comapany, Inc. ("PCI"), and Chief Executive Officer of Polaroid Corporation ("Polaroid"), a  wholly-owned subsidiary of PGW.  Id.  Chee-Awai is the Chief Executive Officer of Petters Capital, LLC, which is also a subsidiary of PGW.  Id.  Ritchie alleges Defendants conspired with Petters and others to fraudulently induce Ritchie into making loans to PGW by representing the loans would be adequately secured by the stock and assets of Polaroid.  RICO Compl. ¶¶ 1-4, 17-44, 50-78, 81.  Ritchie contends Defendants failed to formalize Ritchie's security interests in Polaroid as promised, re-pledged Polaroid assets to

---

[1]  In considering Defendants' Motions to Dismiss, the Court takes the facts alleged in Ritchie's Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

[2]  As part of his scheme, Petters induced investors into providing funds to purportedly finance purchases of electronic consumer goods from wholesalers for resale to large retailers as inventory.  In fact, these electronic goods did not exist.  Petters used the investments from later investors to repay earlier investors their principal, plus an amount Petters represented as profit from the transaction.

another creditor, and later placed Ritchie's security interests into doubt by asserting Ritchie was a creditor of PCI and not of PGW.  Id. ¶¶ 8, 57-60, 108, 111-115.  Ritchie is suing Defendants in their individual capacities, alleging Defendants received millions of dollars in bonuses for their cooperation in the conspiracy.  Id. ¶¶ 30, 102.  Ritchie alleges violations of Racketeer Influenced and Corrupt Organizations Act (RICO), see 18 U.S.C. § 1962(a),(c)-(d), common law fraud, and tortious interference with contract.  The claims are based on the following events.

**A.      Loan Transactions**

On February 1, 2008, Ritchie provided a $31 million loan to PGW to enable Polaroid to repay an existing loan from JP Morgan Chase & Co. ("JP Morgan").  RICO Compl. ¶ 3.  The JP Morgan loan was secured by a lien on Polaroid's stock and assets.  Id.  Petters and Defendants allegedly promised Ritchie that after the JP Morgan loan had been repaid and its liens were released, Ritchie would be given a lien on Polaroid's stock.  Id.  As additional security, Petters personally guaranteed the $31 million loan.  Id.  Defendants represented Petters' personal guarantee would remain in place until Polaroid's stock certificates were delivered to Ritchie.  Id.  The promissory note underlying the $31 million loan states:

> This Note is guaranteed personally by Thomas J. Petters, the owner of all of the issued and outstanding stock of the Borrower; provided, however, that the parties shall endeavor, as soon as reasonably practicable, to secure this Note (along with all other Notes of this tranche, pari passu) by a pledge of 100% of the capital stock of Polaroid Holding Company, LLC and the capital stock of its one hundred percent subsidiary the Polaroid Corporation (collectively, the "Polaroid Companies").

Id. ¶ 58.

In the weeks following the initial $31 million loan, Ritchie made seven additional loans for a total of over $100 million by February 19, 2008.  Id. ¶ 52.  The additional loans were made

in reliance on the representations by Defendants and their co-conspirators that the loans were more than adequately collateralized by Polaroid.  Id.  The February loans are documented by promissory notes (the "February Notes") and a February 19, 2008 Note Purchase Agreement executed by Ritchie, Petters and PGW.  Id. ¶ 58.

On or about February 15, 2008, JP Morgan released its lien on Polaroid's stock and assets and returned the stock certificates to Polaroid Holding Company, a wholly-owned subsidiary of PGW.  Id. ¶ 57.  Thereafter, without Ritchie's knowledge, PGW granted a lien on many of Polaroid's assets to another lender, Acorn Capital Group LLC ("Acorn").  Id. ¶ 60.

In May 2008, based on Defendants' representations as to the value of Polaroid's assets, Ritchie extended the maturity date on the February Notes to "late July/early August" of 2008, and provided additional loans (the "May Notes") to PGW.  Id. ¶ 66.  Defendants informed Ritchie the May loans would be used for PGW's working capital needs.  Id.

In August 2008, Ritchie learned of Acorn's asserted security interests in Polaroid.  Id. ¶ 74.  Also in August, Petters requested an extension on the February and May Notes.  Id. ¶ 75. Ritchie responded by demanding that its security interests in Polaroid be documented.  Id.

On September 19, 2008, following several weeks of negotiations, Ritchie agreed to extend the maturity dates on the February and May Notes to December 19, 2008 in exchange for: (a) an agreement (the "Trademark Security Agreement") memorializing Ritchie's security interests in Polaroid's trademarks in Brazil, India, and China (the "Polaroid Trademarks"), and (b) two agreements (the "Intercompany Note Agreements") pledging as security to Ritchie a number of intercompany notes (the "Intercompany Notes") issued by Polaroid in favor of PCI, Petters Capital, and Thomas Petters, Inc.  Id. ¶¶ 76-78.  One Intercompany Note Agreement was

executed on September 19, 2008, and the other on September 26, 2008.  <u>Id.</u> ¶ 78.  According to

Ritchie, some of the Intercompany Notes are "secured by all or substantially all of the assets of

Polaroid."  <u>In re Polaroid Corp.</u>, 08-bk-46617 (Bankr. D. Minn.) [Claim No. 154-1] Ex. A ¶¶ IV,

V.

**B.     Petters' Ponzi Scheme Revealed, Criminal and Receivership Cases Commenced**

On September 24, 2008, five days after the Trademark Security Agreement was signed

and two days before the second Intercompany Note Agreement was executed, federal authorities

conducted criminal search warrants on Petters' home and corporate office.  <u>Id.</u> ¶ 83.  On October

2, 2008, the United States Attorney (the "Government") filed a criminal complaint alleging a

massive fraud scheme perpetrated by Petters.  <u>United States v. Petters</u>, 08-364 RHK/AJB (D.

Minn.) ("Petters Criminal Case").  Ultimately, a jury found Petters guilty of wire fraud, mail

fraud, money laundering, and other crimes relating to the fraudulent scheme.  Jury Verdict, Dec.

2, 2009  [Petters Criminal Case Docket No. 361].  Petters was sentenced to fifty years in prison,

and a money judgment of $3,522,880,614.10 and forfeiture were ordered.  Sentencing J., Apr. 8,

2010 [Petters Criminal Case Docket No. 400].  The Government's request for a restitution order

was denied, because the burden restitution would have imposed on the court outweighed the

benefit victims would have realized on their restitution claims.  Order, June 3, 2010 [Petters

Criminal Case Docket No. 459].  Instead, victims were allowed a recovery through the remission

of forfeited assets.  <u>Id.</u> at 9-11.

Simultaneously with the filing of the criminal case, the Government filed a civil action

under the Fraud Injunction Statute, 18 U.S.C. § 1345, to preserve Petters' assets for victims of

the fraud.  <u>United States v. Petters</u>, 08-5348 ADM (D. Minn.) ("Receivership Case").  A

receivership and asset freeze were imposed over all assets and entities wholly owned and controlled by Petters, including PGW, PCI, and Polaroid.  Order, Dec. 8, 2008 [Receivership Case Docket No. 127] ("Receivership Order") at 7-18.  Douglas A. Kelley ("Receiver Kelley") was appointed as receiver.  Id. at 13.  The Receivership Order includes a stay of litigation against the individuals and assets subject to the receivership.  Id. at 19-20.  Ritchie twice moved to intervene in the Receivership Case, first to request Receiver Kelley be replaced by a receiver selected by Rtichie, and next to argue the receivership should be vacated as to PGW and Polaroid.  See Receivership Case Docket Nos. 14, 225.  Both requests for intervention were denied by this Court, and the denials were affirmed by the Eighth Circuit Court of Appeals.  United States v. Ritchie Special Credit Inv., Ltd., 620 F.3d 824 (8th Cir. 2010).

## C.     Bankruptcy Proceedings

Following the collapse of Petters' Ponzi scheme, several of Petters' companies filed for bankruptcy protection, including PGW, PCI, Polaroid, and Petters Capital.  See In re Petters Co., Inc., 08-bk-45257 (Bankr. D. Minn.); In re Polaroid Corp., 08-bk-46617 (Bankr. D. Minn.); In re Petters Group Worldwide, LLC, 08-bk-45258 (Bankr. D. Minn); In re Petters Capital, LLC, 09-bk-43847 (Bankr. D. Minn.).  In an agreement signed by the Government, Receiver Kelley, and the PCI, PGW, and Polaroid bankruptcy trustees, the Government agreed not to seek criminal or civil forfeiture of the assets belonging to Petters' bankrupt entities, provided those assets would be distributed through bankruptcy proceedings overseen by the United States Bankruptcy Court.  Order, Sept. 14, 2010 [Receivership Docket No. 1466].  See also Uphoff Decl. [Receivership Case Docket No. 1351] Attach. 1 ("Coordination Agreement") at 3.

Ritchie has filed proofs of claim in the Polaroid, PCI, and Petters Capital bankruptcy

cases.  Ritchie claims it is owed over $200 million based on the amounts due under the February

and May Notes, and that the debt is secured by substantially all assets of Polaroid as a result of

the Trademark Security Agreement and Intercompany Note Agreements.  In re Polaroid Corp.,

08-bk-46617 (Bankr. D. Minn.) [Claim Nos. 154] Ex. A ¶¶ IV, V;  In re Petters Capital, LLC,

09-bk-43847 (Bankr. D. Minn.) [Claim No. 10] Attach. ¶ IV; In re Petters Co., Inc., 08-bk-45257

(Bankr. D. Minn.) [Claim No. 97].  Ritchie has also filed a supplemental proof of claim in the

Polaroid bankruptcy case, asserting Polaroid is liable for tortious or fraudulent conduct related to

Petters' crimes:

> To the extent that it is determined that Polaroid or its officers,
> directors or representatives participated in tortious or criminal
> conduct arising from and related to the various activities that are the
> subject of the recent criminal indictment and conviction of Mr.
> Petters, or otherwise contributed or participated, by action or
> inaction, in defrauding Ritchie and other creditors of PCI and Mr.
> Petters, Ritchie herein asserts that Polaroid is liable for the full
> amount owed to Ritchie by PGW, PCI and Thomas Petters on
> account of such participation in and contribution to the fraudulent
> activities.

In re Polaroid Corp., 08-bk-46617 [Claim 229].

The security interests asserted in Ritchie's proofs of claim are presently being challenged

in the Polaroid, PCI, and Petters Capital bankruptcy cases.  An adversary proceeding filed in the

Polaroid bankruptcy case on February 12, 2009, seeks to invalidate Ritchie's asserted liens in the

Polaroid Trademarks as fraudulent and preferential transfers.  Stoebner v. Ritchie Capital Mgmt.,

LLC, 09-ap-4032 (Bankr. D. Minn.) (the "Polaroid Adversary Proceeding").  According to the

Polaroid trustee the February and May Notes had annual interest rates of 80% and 362.10%,

respectively, and were in default as of August 31, 2008.  [Polaroid Adversary Proceeding Docket

No. 1] ("Polaroid Adversary Compl.") ¶¶ 29-30, 34.  Ritchie discovered on or about September

19, 2008 that its loans were in "serious jeopardy," id. ¶ 35, and "literally days before or after the Ponzi scheme collapsed, Ritchie . . . orchestrated a series of transactions targeted at securing the value of Polaroid and other assets owned or controlled by Thomas Petters in a final-hour attempt to shore up, conceal and cover millions of dollars in losses." Id. ¶ 19.  The Polaroid trustee further alleges Polaroid did not receive value for its grant of security interests in the Polaroid Trademarks, and that "every dollar of the funds invested were initially wired to PCI and then used by PCI to principally satisfy other investor claims." Id. ¶ 31.  The allegations in the Polaroid Adversary Complaint were verified by Jeffries.  RICO Compl. ¶¶ 111-112.  Ritchie denies the allegations and has filed a counterclaim seeking a declaration that its security interests in the Polaroid Trademarks are valid.  See Answer and Countercl. [Polaroid Adversary Proceeding Docket No. 8].  Ritchie asserts the high annual interest rates on the February and May notes are consistent with common practice for unsecured short-term notes.  Id. at Countercl. ¶¶ 14-15.  Ritchie further contends Polaroid received benefits in exchange for its grant of security interests in the Polaroid Trademarks, and that Polaroid was solvent when it transferred the security interests to Ritchie.  Id. ¶¶ 27-28.  The Polaroid trustee's summary judgment motion is presently under advisement in bankruptcy court.

The trustees in the Petters Capital and PCI bankruptcy cases have also filed adversary proceedings against Ritchie, seeking to unwind as fraudulent and preferential transfers the grant to Ritchie of security interests in the Intercompany Notes.  See Seaver v. Ritchie Capital Mgmt., L.L.C., 10-ap-4231 (Bankr. D. Minn.) ("Petters Capital Adversary Proceeding"); Kelley v. Ritchie Capital Mgmt., L.L.C., 10-ap-4440 (Bankr. D. Minn.) ("PCI Adversary Proceeding") (collectively and with the Polaroid Adversary Proceeding, the "Bankruptcy Adversary

Proceedings"). Mediation has been ordered in the Petters Capital Adversary Proceeding. [Petters Capital Adversary Proceeding Docket No. 25]. The PCI Adversary Proceeding is following a litigation schedule established in the PCI bankruptcy case to efficiently manage more than 200 adversary proceedings filed by the PCI trustee. See In re Petters Co., Inc., 08-bk-45257 [Docket Nos. 961, 1151, 1284, 1323].

In April 2009, the bankruptcy court authorized the auction and sale of Polaroid assets free and clear of Ritchie's asserted liens, but allowed Ritchie's liens, to the extent they are determined valid, to attach to the proceeds of the sale. Order, April 17, 2009 [Polaroid Bankruptcy Case Docket No. 332]. During the bidding process, Ritchie attempted to "credit bid" for the Polaroid assets using the value of their security interests. RICO Compl. ¶ 114. The bankruptcy court denied the attempt because Ritchie's liens were subject to a *bona fide* dispute in the Polaroid Adversary Proceeding. Id. ¶ 114-15.

**D.     RICO Action**

On November 19, 2009, Ritchie filed this action in the federal district court in Illinois (the "Illinois Court"). Ritchie alleges Defendants used their positions as officers in Petters' companies to deprive Ritchie of security interests in Polaroid. RICO Compl. ¶¶ 17-18. Ritchie avers Defendants deprived Ritchie of its security interests by re-pledging the collateral to other creditors, id. ¶¶ 58-60; continuously representing to Ritchie that its loans were adequately collateralized by the value of Polaroid, id. ¶¶ 62-70; unnecessarily placing Polaroid into bankruptcy, id. ¶ 109; and falsely attesting Ritchie was not a creditor of Polaroid or PGW. Id. ¶ 114. Ritchie avers Defendants' conduct caused Ritchie to lose its valuable and bargained-for interests in Polaroid, id. ¶¶ 122, 130, 137, 150; prevented Ritchie from foreclosing on its security

9

interests in Polaroid, id. ¶ 143; and prevented Ritchie from using its security interests in Polaroid to "credit bid" in the Polaroid auction.  Id.

The Illinois Court determined the pending bankruptcy and receivership litigation in Minnesota involved "the same or similar issues to those raised by" Ritchie in the RICO Action, and transferred the case to the Minnesota District Court to avoid the "clear risk of inconsistent verdicts" and to best serve "the efficient administration of the court system." Ritchie Capital Mgmt, LLC v. Jeffries, No. 09 CV 07228, 2010 WL 768877, at *4 (N.D. Ill. March 4, 2010).

Soon after the transfer, then Judge James Rosenbaum[3] of the federal district court in Minnesota dismissed the RICO Action, reasoning this case requires the Court to interpret PGW's loan documents, and that such interpretation would violate the Receivership Order's prohibition on interference with the Receiver's possession of receivership documents.  Transcript, June 11, 2010 [Docket No. 82] at 19-20.  The Eighth Circuit reversed, holding the Receivership Order prohibits only physical possession of receivership documents, and does not prohibit interpretation of those documents.  Ritchie, 653 F.3d at 761-62.  The Eighth Circuit noted, however, that district court had the authority to abstain from hearing the RICO Action "if it raises issues that substantially duplicate those raised by a case pending in another court." Id. at 763 n.8.  Following the Eighth Circuit's ruling and remand to the district court, this Court was assigned the case due to Judge Rosenbaum's retirement.

Defendants have now filed new motions to dismiss.  Defendants argue the Court should abstain from exercising jurisdiction over this RICO Action because it substantially duplicates issues raised in the pending Bankruptcy Adversary Proceedings.  Defendants insist the core issue

---

[3] Judge Rosenbaum resigned his position as a federal district judge in August, 2010.

here and in those proceedings is whether Ritchie has ever held valid security interests in Polaroid, and argue the bankruptcy court's resolution of this issue will significantly narrow, if not dispose of, the issues raised in this case.  Defendants argue the available relief, if any, to Ritchie in this RICO Action is contingent upon the outcome of the Bankruptcy Adversary Proceedings.  This is so because the extent of Ritchie's alleged injury – namely, the deprivation of Ritchie's security interests in Polaroid – depends upon whether and to what extent Ritchie presently holds valid security interests in Polaroid, which will be resolved in the bankruptcy court.  Defendants also contend Ritchie's filing of this action is a thinly veiled attempt to litigate substantially the same issues against substantially the same parties at the same time, and that the case should be dismissed to conserve judicial resources and to avoid piecemeal litigation and inconsistent results.

Ritchie strongly opposes dismissal, insisting this case involves substantially different parties, claims, and remedies than those in the Bankruptcy Adversary Proceedings, and that the district court is the only forum in which Ritchie can fully litigate its claims against the Defendants.  Ritchie further argues that the legal claims in the RICO Action entitle Ritchie to a jury trial before an Article III judge, and the legal claims must be decided prior to the bankruptcy court's resolution of the equitable claims in the Bankruptcy Adversary Proceedings.

### III.  DISCUSSION

Generally, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976).  However, where federal courts are simultaneously exercising jurisdiction over the same matter, one federal court may defer to another based on "considerations of '[w]ise judicial

administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Id. (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)).  In deciding whether to abstain from one of two concurrent federal proceedings, "no precise rule has evolved."  Brewer v. Swinson, 837 F.2d 802, 804 (8th Cir. 1988) (citing Colorado River, 424 U.S. at 817); see also Florida v. United States, 285 F.2d 596, 604 (8th Cir. 1960) ("There is no rigid or inflexible rule for determining priority of cases pending in federal courts involving the same subject matter.").  Instead, "where identical issues are raised in cases pending in different federal courts, the general principle is to avoid duplicative litigation." Id.  In deciding whether to avoid duplicative litigation, "the determining factors should be equitable in nature, giving regard to wise judicial administration." Brewer, 837 F.2d at 804.  District courts are accorded "an ample degree of discretion" in the decision to stay or dismiss a proceeding based on duplicative federal litigation.  Kerotest, 342 U.S. at 183-84.

## A.     Duplicative Proceedings

A threshold issue for determining whether to abstain due to the pendency of a concurrent federal proceeding is whether the proceedings are, in fact, duplicative.  Brewer, 837 F.2d at 804. Litigation is duplicative if a plaintiff attempts to litigate "the same issue at the same time in more than one federal court."  Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 932 (8th Cir. 2011) (quoting Crowley Cutlery Co. v. United States, 849 F.2d 273, 279 (7th Cir. 1988)).

In the RICO Action, Ritchie alleges it was harmed because Defendants' conduct caused it to lose its security interests in Polaroid.  See RICO Compl. ¶ 121 (stating Defendants "denied [Ritchie] the benefits of the interests granted [to Ritchie] in Polaroid"); Id. ¶ 122 (alleging "Defendants' conduct caused [Ritchie] to lose the valuable Polaroid security interests").  In the

Bankruptcy Adversary Proceedings, Ritchie insists it holds security interests in substantially all assets of Polaroid.  Thus, the litigation is duplicative because Ritchie is litigating the same issue (its security interests in Polaroid) at the same time in two federal courts.[4]

Another duplication is whether Ritchie provided value to Polaroid in exchange for its security interests.  In the RICO Action, Ritchie alleges it gave value to Polaroid in exchange for its security interests, and that Jeffries' statement to the contrary caused a *bona fide* dispute over Ritchie's security interests, which in turn prevented Ritchie from credit bidding at the Polaroid auction.  RICO Compl. ¶¶ 114-115, 143.  In the Polaroid Adversary Proceeding, the Polaroid trustee alleges Ritchie did not give reasonably equivalent value to Polaroid in exchange for the grant of security interests, causing Polaroid's pledge of those interests to Ritchie to be fraudulent or preferential transfers.  Polaroid Adversary Compl. ¶¶ 23, 42, 55, 59, 71, 75.

Yet another duplicative issue is whether Polaroid was solvent at the time of the transactions.  In the RICO Action, Ritchie alleges Jeffries unnecessarily placed Polaroid into bankruptcy in a bad-faith attempt to void Ritchie's security interests in Polaroid.  RICO Compl. ¶¶ 108-109.  In the Polaroid Adversary Proceeding, the Polaroid trustee alleges Polaroid was insolvent at the time of or as a result of the transfer of security interests to Ritchie, thereby causing the transfers to be fraudulent or preferential.  Polaroid Adversary Compl. ¶¶ 58, 76.

Ritchie insists the litigation is not duplicative because the RICO Action involves different claims and relief than those in the Bankruptcy Adversary Proceedings.  However, causes of action brought under different legal theories in different cases are considered to be the

---

[4]   This conclusion is consistent with that reached earlier in this case by the Illinois Court, which found that the present action involves "the same or similar issues to those raised by" the bankruptcy proceedings in this district.  <u>Ritchie</u>, 2010 WL 768877, at *4.

same if they rely on "a common nucleus of operative fact" and seek "effectively the same relief .

. . in both cases." <u>Friez v. First Am. Bank & Trust of Minot</u>, 324 F.3d 580, 581 (8th Cir. 2003)

(finding tort-based suit for the monetary value of ERISA benefits was same cause of action as

prior ERISA-based suit seeking actual benefits).  Here, although Ritchie's causes of action are

premised upon different legal theories, its claims are duplicative of those being litigated in the

Bankruptcy Adversary Proceedings, because they are based on a common nucleus of operative

fact: all of the actions pertain to the loans by Ritchie to Petters under the February and May

Notes and the Polaroid security interests provided to Ritchie as security for the loans.

Additionally, the causes of action seek the same relief – the value of Ritchie's security interests

in Polaroid.

Ritchie next argues this case is not duplicative because the parties to the RICO Action are

not identical to those in the Bankruptcy Adversary Proceedings.  However, parties to concurrent

proceedings need not be identical for the litigation to be considered duplicative.  <u>Samuels Grp.,</u>

<u>Inc. v. Hatch Grading & Contracting, Inc.</u>, 697 F. Supp. 2d 1042, 1051 (N.D. Iowa 2010);

<u>Beardmore v. Am. Summit Fin. Holdings, LLC</u>, No. Civ. 01-948 (DWF/SRN), 2001 WL

1586785, at *6 (D. Minn. Dec. 10, 2001).  Indeed, the Eighth Circuit, in its earlier ruling in this

RICO Action, determined the Defendants are not in privity with the bankrupt entities or

receivership defendants, yet nevertheless noted the district court may stay or dismiss this case to

avoid duplicative litigation if the balance of abstention-related factors so warranted.  <u>Ritchie</u>, 653

F.3d at 763 and n.8.  Litigation involving non-identical parties may be duplicative where the

interests of non-identical parties are aligned or related.  <u>Pace Constr. Co., Inc. v. Travelers Cas.</u>

<u>& Sur. Co. of Am.</u>, 259 F. Supp. 2d 934, 937 (E.D. Mo. 2003) (finding parallel proceedings

because interests of non-identical parties were aligned);  Samuels Grp., 697 F. Supp. 2d at 1051

(abstaining where interests of non-identical parties were related).  Here, the identity and interests

of the parties to the RICO Action, Bankruptcy Adversary Proceedings, and Receivership Case

are clearly related.  Ritchie "candidly admit[s] that if the receivership order was not in place in

Minnesota, [Ritchie] would add Petters, PCI, PGW, and other defendants to [the RICO] action."

Ritchie, 2010 WL 768877, at *4; see also RICO Compl. ¶ 29 (stating Ritchie is "enjoined from

bringing this action directly against Petters, PCI, PGW and other defendants in the Receivership

Action without the permission of that Court").  Additionally, the interests of the RICO

Defendants and the Polaroid bankruptcy estate are further related because Ritchie's supplemental

claim in the Polaroid bankruptcy case states that if Polaroid's officers are determined to have

defrauded Ritchie or participated in tortious conduct related to Petters' criminal activities,

Polaroid is liable for the full amount owed to Ritchie by PGW, PCI and Thomas Petters.  In re

Polaroid Corp., 08-bk-46617 [Claim 229].

Finally, Ritchie argues the claims are not duplicative because there is not a substantial

likelihood that the claims in the bankruptcy adversary proceedings will fully dispose of the

claims in the RICO Action.  See Fru-Con Constr. Corp. v. Controlled Air, Inc., 574 F.3d 527,

535 (8th Cir. 2009) (stating a substantial similarity between state and federal claims exists "when

there is a substantial likelihood that the state proceeding will fully dispose of the claims

presented in the federal court").  However, the standard announced in Fru-Con applies to

situations involving contemporaneous state and federal proceedings.  See United States v. Rice,

605 F.3d 473, 476 (8th Cir. 2010) (applying the standard from Fru-Con because appellant

"ma[de] no claim about a concurrent federal court proceeding").[5]   In contrast, when faced with

wholly federal proceedings, the Eighth Circuit focuses on whether a plaintiff is "litigat[ing] the

same issue at the same time in more than one federal court."  Blakley, 648 F.3d at 932; Brewer,

837 F.2d at 804 (stating the "threshold question . . . is whether the issues raised in [the second

proceeding] are, indeed, identical to those in the [first] action"); see also Missouri ex rel. Nixon

v. Prudential Health Care Plan, Inc., 259 F.3d 949, 954-55 (8th Cir. 2001) (abstaining despite the

possibility that the district court case would not fully resolve the parties' dispute).  Significantly,

the Eighth Circuit has determined in this case that "the district court has the authority to refuse to

hear this case if it raises issues that substantially duplicate those raised by a case pending in

another court."  Ritchie, 653 F.3d at 763 n.3.  Because the issues raised in the RICO Action

substantially duplicate those being litigated in the Bankruptcy Adversary Proceedings, the

litigation is duplicative.

## B.    Equitable Considerations

In deciding whether to dismiss duplicative litigation, "the determining factors should be

equitable in nature, giving regard to wise judicial administration."  Brewer, 837 F.2d at 804.

Relevant factors include: conservation of judicial resources, Kerotest, 342 U.S. at 183;

Prudential, 259 F.3d at 954; the comprehensive disposition of litigation, Kerotest, 342 U.S. at

183; Colorado River, 424 U.S. at 817; the relative progress of the two actions, Moses H. Cone

Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21-22 (1983); whether a suit is filed for a

---

[5]   The Supreme Court has recognized a heightened duty to exercise jurisdiction in instances
of pending state and federal proceedings, as compared to situations involving the pendency of two
federal proceedings.  See Colorado River, 424 U.S. at 817 (stating "the pendency of an action in the
state court is no bar to proceedings concerning the same matter in the Federal court having
jurisdiction.  As between federal district courts, however, though no precise rule has evolved, the
general principle is to avoid duplicative litigation.") (internal citations and quotation marks omitted).

vexatious, reactive or tactical purpose, id., at 17 n.19; Federated Rural Elec. Ins. Corp. v.

Arkansas Elec. Cooperatives, Inc., 48 F.3d 294, 299 (8th Cir. 1995); and whether the forum in

which the first case was filed adequately protects the rights of the litigants in the second case.

Moses H. Cone, 460 U.S. at 26.  The equitable factors are "to be applied in a pragmatic, flexible

manner with a view to the realities of the case at hand."  Id. at 21.

       **1.**      **Conservation of Judicial Resources**

      Abstaining from the duplicative RICO Action until after the bankruptcy court has

determined the nature and extent of Ritchie's security interests in Polaroid will conserve judicial

resources by avoiding having two federal courts simultaneously examining the same facts to

resolve the same issue.  The bankruptcy court's binding decision on the duplicative issues will

prevent Ritchie from re-litigating them in district court.  See Katchen v. Landy, 382 U.S. 323,

334 (1966) ("[T]he normal rules of collateral estoppel apply to the decisions of bankruptcy

courts."); Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 732 (8th Cir. 2004) (recognizing

preclusive effect of bankruptcy proceedings on subsequent RICO claims); Matrix IV, Inc. v. Am.

Nat'l Bank & Trust Co. of Chicago, 649 F.3d 539, 548 (7th Cir. 2011) (applying doctrine of

collateral estoppel to bar relitigation of issues alleged in RICO action that were "based on the

same core of operative facts as the claims . . . litigated and lost in the bankruptcy proceedings").

      Additionally, the bankruptcy court, as a court of expertise, provides a more efficient

forum for litigating the issue of Ritchie's security interests in Polaroid.  The bankruptcy forum

"promotes judicial economy and efficiency by making use of the bankruptcy courts' unique

knowledge of Title 11 and familiarity with the actions before them."  In re Healthcentral.com,

504 F.3d 775, 787-88 (9th Cir. 2007).  A determination of Ritchie's security interests in Polaroid

raises issues routinely addressed by bankruptcy courts, and thus the duplicative issues are more economically resolved in that forum.

### 2.      Comprehensive Disposition of Litigation

The bankruptcy proceedings will provide the most comprehensive resolution of Ritchie's security interests in Polaroid.  In the bankruptcy forum, the nature, extent and priority of Ritchie's security interests are being determined in conjunction with the claims and interests of other Polaroid creditors.  In contrast, a determination of Ritchie's security interests by the district court would be made outside of the bankruptcy context and result in piecemeal litigation.  The piecemeal determination of Ritchie's security interests creates the potential for inconsistent decisions between the district and bankruptcy courts.  In this case of high public interest, conflicting decisions would likely erode the public's confidence in the judicial system.

### 3.      Relative Progress

The Polaroid Adversary Proceeding, in which a summary judgment ruling is pending, has progressed significantly further than the RICO case, in which the Defendants have yet to file an answer.

### 4.      Tactical or Reactive Purpose

The timing and substance of the RICO Action suggest it was filed for reactive or tactical purposes.  The suit was filed after Ritchie was "[u]nable to intervene in the receivership action and not having much luck in the bankruptcy forum."  Ritchie, 653 F.3d at 760.  Specifically, in the months before the RICO Action was filed: (1) the federal district court overseeing the Receivership Case had denied Ritchie's requests to intervene for the purposes of removing Kelley as receiver and excluding Polaroid from the receivership; (2) the bankruptcy court had

overruled Ritchie's objection to the appointment of Kelley as the trustee for PCI and PGW; (3)

Ritchie's requests to credit bid at the Polaroid auction had been denied; and (4) the Polaroid

Adversary Proceeding had been filed challenging Ritchie's asserted security interests in

Polaroid.  Following these events in Minnesota, Ritchie filed the RICO Action in federal court in

Illinois.  The allegations in the RICO Complaint include challenges to:  the circumstances

surrounding Kelley's appointment as receiver, RICO Compl. ¶¶ 86-100; Kelley's

disinterestedness as trustee of PGW and PCI, id. ¶ 101, and the denial of Ritchie's request to

credit bid at the Polaroid auction.  Id. ¶¶ 111-115.  This RICO Action suggests Ritchie is seeking

to obtain a more favorable ruling on the same issues in a different forum.

### 5.    Adequacy of Forum to Protect Litigants' Rights

Ritchie argues it will be deprived of its Seventh Amendment right to a jury trial if the

equitable claims in the Bankruptcy Adversary Proceedings are decided before the legal claims in

the RICO Action.  In support, Ritchie relies on Beacon Theatres, Inc. v. Westover, 359 U.S.

500, 509-11 (1959) for the proposition that, in cases presenting both legal and equitable issues, a

jury must decide purely legal issues or mixed questions of law and equity before other claims are

considered by a court.  However, the Supreme Court has repeatedly held that the general rule

enunciated in Beacon Theatres does not apply to a bankruptcy court's adjudication of equitable

claims in a bankruptcy proceeding.  Katchen, 382 U.S. at 339-40 (recognizing the bankruptcy

statutory scheme as one of the "situations in which [a c]ourt could proceed to resolve the

equitable claim first even though the results might be dispositive of the issues involved in the

legal claim"); Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 334-35 (1979).  In Parklane

Hosiery, the Supreme Court reiterated the holding in Katchen that:

> a bankruptcy court, sitting as a statutory court of equity, is empowered to adjudicate equitable claims prior to legal claims, even though the factual issues decided in the equity action would have been triable by a jury under the Seventh Amendment if the legal claims had been adjudicated first.
>
> . . .
>
> Thus the Court in <u>Katchen v. Landy</u> recognized that an equitable determination can have collateral-estoppel effect in a subsequent legal action and that this estoppel does not violate the Seventh Amendment.

<u>Parklane Hosiery</u>, 439 U.S. at 334-35.  Accordingly, Ritchie's Seventh Amendment right to a jury trial will not be violated by the bankruptcy court's adjudication of the claims in the Bankruptcy Adversary Proceeding prior to this Court's adjudication of the legal claims in the RICO Action, even though the bankruptcy court's determination will have preclusive effect in the RICO Action.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss [Docket Nos. 92, 97] are **GRANTED.**  The case is dismissed without prejudice until after the validity of Ritchie's security interests in Polaroid have been adjudicated in the Bankruptcy Adversary Proceedings.[6]

---

[6] The balance of equitable factors would also have warranted a stay of the duplicative RICO Action.  <u>See</u> <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254-55 (1936) (recognizing a district court's inherent power to stay proceedings to manage its docket); <u>Lunde v. Helms</u>, 898 F.2d 1343, 1345 (8th Cir. 1990) (same).  However, at oral argument, both parties stated that in the event the Court decided not to exercise jurisdiction over the RICO Action at this time, they would prefer the action be dismissed rather than stayed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 2, 2012.